## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLES MALONE,                          :

     Plaintiff,                        :

vs.                                      :  CA 13-0223-C

CAROLYN W. COLVIN,                       :
Acting Commissioner of Social Security,
                                               :

     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 23 & 24 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel for the parties at the June 27, 2014 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 23 & 24 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

Plaintiff alleges disability due to degenerative disc disease. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.**
>
> **2.     The claimant has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> .          .          .
>
> **3.     The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).**
>
> .          .          .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .          .          .
>
> **5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant should work in an occupation that allows him to alternate between sitting and standing. Claimant should never climb ladders, ropes, or scaffolds. Claimant should use handrails to climb stairs. Claimant's work should be limited to simple tasks consistent with a SVP of 1 or 2.**
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Claimant alleges that he is limited in his ability to work due to a hernia, back problems, and problems with his right elbow. Claimant stated that he is unable to lift anything heavy; he gets tired easily, and is unable to walk far. Claimant stated that these impairments are what caused him to cease working.

.        .        .

Claimant testified that pain he experiences is an eight on a scale of one to ten, and the pain never goes away. The pain is in his lower back and radiates down to both of his legs almost to his ankles. The pain wakes claimant up at night. He tosses and turns all night. Claimant takes Lortab, Tramadol, Advil, and muscle relaxers. Claimant testified that he takes muscle relaxers three times daily. He stated that the medication makes him drowsy and puts him to sleep. Claimant stated that he lies down approximately three hours a day in the bed asleep. When he is not in the bed, he is in the recliner or on the couch for approximately three hours.

Claimant does not drive; he depends on his wife to drive. Claimant testified that he does not drive anymore because it hurts his lower back. Claimant's wife drove him 115 miles to the hearing. They left home at 5:30 a.m. and arrived at the hearing twenty minutes to 10:00 a.m. Claimant testified that his wife had to stop twice for approximately thirty minutes in order for him to get out and walk around. Claimant is unable to bend over and pick up a $100.00 bill off the floor or bend down to tie his shoes. Claimant is unable to stand very long, and sitting bothers him. Claimant testified that he is able to sit approximately thirty minutes before having to get up. Claimant cannot get in and out of the bathtub. Claimant is unable to lift a gallon of milk or a five-pound bag of sugar. Claimant is unable to climb ladders or scaffolds, and has to use handrails to go up and down stairs.

He spends his time with his wife, who is on dialysis, or with his son. During the day, he watches TV a lot.

.　　.　　.

Claimant spends most of his day at home sitting and watching television. Claimant will ride to the grocery store with his son and/or his wife. Claimant testified that he has not looked for work because he is unable to work anymore. Claimant did apply and received unemployment benefits in 2009 and early 2010. Claimant's wife manages th[e] checkbook and bills. Claimant does not receive food stamps or any other type of assistance.

Claimant completed a Function Report where he reported that when he wakes up, he lies around all day. He eats and sleeps because his back will not let him do too much. Claimant reported that he has some difficulty handling his personal needs. Claimant stated that his back hurts when he dresses, bathes, and uses the bathroom. If he drops something, it is hard for him to pick it up. Claimant prepares his own meals weekly. Claimant stated that it takes him a long time to prepare his meals. Claimant does light housekeeping chores like washing dishes. Claimant does not pay bills, count change, or use[] a checkbook. Claimant can handle a savings account. Claimant reported that he does not spend time with others. The only place claimant listed that he goes is church. Claimant reported that he cannot walk very far before needing to stop and rest. However, claimant is able to pay attention all day. Claimant follows written and verbal instructions very well. Claimant gets along with authority figures wells, handles stress well, and handles changes in routine well.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Claimant's contentions that he is unable to work due to the above impairment are unsupported by the evidence of record. While there is sufficient evidence that claimant has the above impairment, there is insufficient evidence that the above impairment prevents claimant from working. On June 25, 2009, claimant reported to Franklin Primary Health Center complaining of back problems. Claimant underwent a physical examination that was normal. It was noted that claimant's spine was in good alignment, and claimant most likely was experiencing muscle spasms. Claimant underwent an x-ray of his lumbar spine that was incomplete, as the lateral view of the L5-S1 junction was not provided. However, the x-ray did reveal disc space narrowing at L3-4 and L4-5 with moderate bony osteophytic changes consistent with degenerative disc disease. It appears from the evidence that the next time claimant reported to Franklin Primary Health Center was on October 28, 2009 complaining

of a swollen area to the left groin area, and knots in his back and neck. It was noted that claimant's pain was a three on the scale of one to ten. Claimant was diagnosed with a hernia, and was advised that he would need surgery.

On January 13, 2010, claimant reported to Southwest Alabama Medical Center for hernia repair. Claimant underwent a left inguinal herniorrhaphy with mesh graft. Claimant tolerated the procedure well, and was returned to recovery in stable condition. Claimant followed up on January 20, 2010 and stated that he was doing well with mild pain.

On February 18, 2010, consultative examiner, Huey Kidd, DO, examined claimant. Claimant informed Dr. Kidd that he was applying for disability because of pain in his back. Claimant stated that he has had pain in his back for several years, and there has been an increase in the severity over the last couple of months. Claimant is unaware of any specific injury, but stated the pain started at the lumbosacral junction that radiates down into his left knee. The pain was sharp and constant, and hurts him every day. During Dr. Kidd's examination, he observed that claimant was alert, pleasant, and interactive. Claimant had a full range of motion of his extremities, and 5/5 strength of the upper extremity. Claimant had a full range of motion, and 5/5 strength of the lower extremity. Claimant was able to heel and toe walk, although very slowly. Claimant's straight leg raises were positive bilaterally to sixty-five degrees in both legs in a seated position bilaterally. Claimant ambulated without any difficulty, but was unable to bend and touch his toes, and was unable to squat. X-rays of claimant's lumbar spine revealed a straightening of the lumbar lordosis with degenerative disc disease at L3-L4, L4-L5, and L5-S1. The most severe was at L4-L5. There was also some osteophyte formation on the anterior aspect of L4. Dr. Kidd diagnosed claimant with osteoarthritis of the lumbar spine and possible herniated disc. Dr. Kidd stated that the claimant was very stiff, and had a lumbar radiculopathy. Dr. Kidd stated that claimant's back pain was severe, and that he would need an MRI for further determination of the reason for his back pain. Dr. Kidd opined that it would be very difficult for claimant to maintain the type of employment that he ha[d] during his lifetime.

On March 16, 2010, claimant reported to Franklin Primary Health Center complaining of back pain. It was noted that claimant's pain was a four on a scale of one to ten. Claimant stated that he had completed forms for disability. Claimant underwent a physical examination where it was noted that claimant had a normal alignment of the spine. Claimant was diagnosed with low back pain and degenerative disc disease. Claimant was treated with medication. Claimant's treating physician had a discussion with claimant regarding his disability forms. His treating physician stated that low back pain is not disabling.

On April 13, 2010, claimant reported to Franklin Primary Health Center complaining of back pain. Claimant stated that his pain was a nine on a

scale of one to ten. Claimant underwent a physical examination where it was noted that claimant had good alignment of the spine, but had a decreased range of motion because of pain. Claimant was diagnosed with degenerative disc disease. Claimant underwent an x-ray of the lumbar spine that revealed mild degenerative spondylitic changes. There was a disc space narrowing and spondylitic change at L4-5, but no compression fractures were seen. The x-ray further revealed disc disease at L4-L5 [and] revealed mild progression since the previous examination.

On May 11, 2010, claimant reported to Franklin Primary Health Center complaining of back and right ankle pain. Claimant stated that his pain was a nine on the scale of one to ten. It was noted that if claimant's pain was a nine on the scale of one to ten then he would need an MRI for further evaluation. On July 6, 2010, claimant underwent an MRI of his lumbar spine. The MRI revealed degenerative disc change from L3-L4 through L5-S1 with significant findings at the L4-L5 and L5-S1 levels. The MRI revealed that the vertebral body heights and alignment were intact, and the conus at the T12-L1 level and it appeared normal. The L1-L2 and L2-L3 showed no significant canal or foraminal narrowing. At L3-L4 diffuse bulge and facet hypertrophy was present. There was moderate bilateral foraminal narrowing, and mild central canal stenosis. The disc bulge abuts traversing roots and that may cause slight mass effect on them. There was facet hypertrophy and moderate bilateral foraminal narrowing with crowding of both exiting roots. There was mild central narrowing. At L5-S1, diffuse bulge was present with slight central prominence and no significant central narrowing. There was facet hypertrophy, and the finding led to mild to moderate bilateral foraminal narrowing with what appeared to be slight mass effect on both exiting roots greater on the left side.

On July 28, 2010, claimant reported to Franklin Primary Health Center for discussion of MRI and refills on medication. It was noted that claimant was not experiencing any pain on this visit. Claimant was diagnosed with low back pain, spinal stenosis, and degenerative disc disease, and prescribed medication. On September 30, 2010, claimant reported to Franklin Primary Health Center complaining of back pain and prescription refills. It was noted that claimant's pain was a four on a scale of one to ten. . . . Claimant was diagnosed with low back pain radiation and palpitations. Claimant was prescribed medication.

On April 25, 2011, R. Rex Harris, M.D., wrote a letter on behalf of claimant. Based upon Dr. Harris' examination, he observed that claimant had full range of motion of the neck, left shoulder, left elbow, and left wrist. There was decreased abduction of the right shoulder, but a full range of motion of the right elbow and right wrist. Claimant's grip and sensation was normal bilaterally. His muscle groups were 5/5 in the upper extremities. His lumbar flexion was eighty degrees, extension was zero degrees, and lateral motion was ten degrees. There was full range of motion of the hips, knees, and ankles. There was negative straight leg

raising bilaterally in the lower extremities. Reflexes were hypoactive in the lower extremities, and sensation was normal in the lower extremities. Claimant was able to squat and toe/heel walk. Dr. Harris opined that claimant had degenerative arthritis of the lumbar spine, but that he was capable of light to sedentary work in the workplace.

However, according to the Medical Source Statement, the claimant was able to do less then sedentary work because of his pain. The claimant was able to sit, stand, and walk for only five minutes at one time without interruption, and was only able to sit, stand, and walk for one hour out of an eight-hour day. The claimant could never climb stairs, ramps, ladders, or scaffolds, and claimant could never balance, kneel, stoop, crouch, or crawl. In reviewing this assessment, the undersigned finds these limitations were based solely on the claimant's subjective reports, considering the assessment is so contrary to the clinical findings found by Dr. Harris and so contrary to his opinion the claimant could perform light to sedentary work.

As previously stated, claimant's contentions that he is unable to work at all due to the above impairment is not supported by the totality of the evidence. First, none of claimant's treating and/or examining physicians ever opined that claimant was unable to work. Dr. Kidd opined that it would be very difficult for claimant to maintain the type of employment that he had during his lifetime. However, Dr. Kidd did not opine that it would be difficult for claimant to maintain any type of employment, just the type of employment claimant had been engaging in as a chain saw operator. In addition, irrespective of Dr. Harris' Medical Source Statement, Dr. Harris opined that claimant was able to perform light to sedentary work. Moreover, claimant's treating physician stated that claimant's low back pain was not disabling.

Second, claimant's objective evidence shows, at best, moderate difficulties due to problems with claimant's back. When claimant reported to Franklin Primary Health Center, it was always noted that claimant had good alignment of his spine. On April 13, 2010, claimant underwent an x-ray of his lumbar spine that revealed mild degenerative spondylitic changes. There was a disc space narrowing and spondylitic change at L4-L5, but no compression fractures were seen. The x-ray further revealed disc disease at L4-L5 revealed mild progression since the previous examination. On July 6, 2010, claimant underwent an MRI of his lumbar spine. The MRI revealed degenerative disc change from L3-L4 through L5-S1 with significant findings at the L4-5 and L5-S1 levels. The MRI revealed that the vertebral body heights and alignment were intact, and the conus at the T12-L1 level and it appeared normal. The L1-L2 and L2-L3 showed no significant canal or foraminal narrowing. At L3-4 diffuse bulge and facet hypertrophy was present. There was moderate foraminal narrowing, and mild central canal stenosis. The disc bulge abuts traversing roots and that may cause slight mass effect on them. There was facet hypertrophy and moderate bilateral foraminal narrowing with crowding of both

exiting roots. There was mild central narrowing. At L5-S1, diffuse bulge was present with slight central prominence and no significant central narrowing. There was facet hypertrophy, and the finding led to mild to moderate bilateral foraminal narrowing with what appeared to be slight mass effect on both exiting roots greater on the left side.

Third, the recent consultative examination indicated the claimant had no problems ambulating. The examination confirmed intact strength testing and the ability to heel-toe walk and squat. No treatment has been documented since September 2010, including no urgent or emergent care. At that visit, he reported his pain level as 4/10, indicting adequate control on his prescribed medications. Just a few months before, in July, he reported he was not experiencing any pain. The claimant alleges that he has no insurance and cannot afford medical treatment; however, claimant testified that he is not receiving any assistance. There is no evidence that claimant has sought any medical assistance programs. Lastly, claimant has only been treated with medication. None of claimant's treating and/or examining physicians ever suggested any other treatment options such as surgical treatment. Hence, it is safe to assume that since no other treatment options have been suggested, that claimant's symptoms were not severe enough to warrant more aggressive treatment.

The claimant has no difficulty engaging in his chosen activities. As acknowledged by the claimant, during the day he sits a lot watching TV. At other times, he takes rides with [his] wife and/or son. In fact, according to the hearing testimony, it was a three-hour ride to the hearing, which he tolerated with two stops to allow him to walk around. As noted above, the assessed limitations allow for a sit/stand option.

There is no medical corroboration for the claimant's testimony he requires daytime naps for 3 hours.

As for the opinion evidence, the undersigned has considered the opinion of claimant's treating physician in Exhibit 7F. Claimant's treating physician opined that claimant's low back pain was not disabling. In considering the treating physician's opinion, the undersigned notes that the treating physician is an examining physician with a significant treatment history. Furthermore, the opinion is supported by medical signs and laboratory findings and is consistent with the record as a whole. Therefore, the undersigned gives great weight to the treating physician's opinion.

The undersigned has considered the opinion of Dr. Kidd in accordance with 20 CFR 404.1527. In this case, no treating physician has offered an opinion sufficient upon which to assess the claimant's residual functional capacity. However, the undersigned notes that Dr. Kidd's opinion is consistent with records and reports obtained from the claimant's treating physicians and with the evidence as a whole. Therefore, the undersigned

gives significant weight to the opinion of Dr. Kidd as an examining physician.

In addition, the undersigned has considered the opinion of Dr. Harris. The undersigned notes that Dr. Harris' opinion that claimant is able to perform light to sedentary work is consistent with the medical evidence as a whole; however, Dr. Harris' Medical Source Statement contradicts his own opinion and is contradictory to the record as a whole. Thus, due to this inconsistency, the undersigned assigns little weight to Dr. Harris' opinion.

.    .    .

In sum, the above residual functional capacity assessment is fully supported by the objective evidence, treatment records, the claimant's activities, and the record as a whole.

**6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.    .    .

**7.      The claimant was born on October 18, 1964 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.    .    .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age,

education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as price marker (DOT 209.587-034 light unskilled) with 4,000 jobs locally and 500,000 jobs nationally; cloth examiner (DOT 609.687-022 light unskilled) with 3,000 jobs locally and 200,000 jobs nationally; and garment sorter (DOT 222.687-014 light unskilled) with 2,500 jobs locally and 150,000 jobs nationally.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, the undersigned assessed an at-will sit stand option as part of the claimant's residual functional capacity. The DOT does not recognize a sit stand option. In that limited regard, the undersigned finds that the vocational expert's testimony diverges from DOT guidance. Nonetheless, because the undersigned assessed an activity not recognized by the DOT it was incumbent upon the vocational expert to use her education, training, and experience, combined with the DOT, to ascertain if there were representative occupations within which the claimant could perform.[2] Therefore, the undersigned finds that the vocational expert's [testimony] was consistent with the DOT to the extent necessary for the purposes of agency guidance.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 14, 15, 15-16, 16, 16-20 & 21 (internal citations omitted; emphasis in original; footnote added).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[2]     Indeed, the VE specifically stated that her testimony was consistent with the DOT with the exception of the information provided in response to the sit/stand option; this information was based on her "education, and training, and experience in the field." (Tr. 60.)

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. An ALJ, in turn,

> uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f)); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.* at 1237 & 1239; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

identified by the vocational expert ("VE"), is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[1] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Malone asserts three reasons why the Commissioner's decision to deny him disability insurance benefits and supplemental security income is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in finding he does not suffer severe pain as he testified to and as is supported by the opinion of consultative examiner, Dr. Huey Kidd, and in reaching this determination improperly accorded great weight to the treating nurse practitioner; (2) the ALJ erred in rejecting the opinion of consultative examiner Dr. R. Rex Harris; and (3) the ALJ erred in identifying a residual functional capacity that was not specific. In this instance, the undersigned will consider plaintiff's first assignment of error separate and apart from

---

[1] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

the other two assignments of error, both of which will be considered together in the context of the determination regarding plaintiff's residual functional capacity.

A. **Weight Afforded Opinion of Nurse Practitioner**.  In contending that the ALJ erred in finding he does not suffer severe pain—consistent with his testimony (Tr. 33) and the opinion of Dr. Huey Kidd (Tr. 223 ("His back pain is severe."))—the focus of plaintiff's argument falls upon the ALJ affording "great weight" to the opinion of his "treating physician" that his "low back pain was not disabling." (Tr. 20.) Of course, the problem with the ALJ's decision in this regard is that Leanne Tew is plaintiff's treating nurse practitioner (*compare, e.g.,* Tr. 262 *with* Tr. 37 (plaintiff identified Tew as his treating nurse practitioner)), not a treating physician.

The regulations make clear that a nurse practitioner is not an acceptable medical source but, instead, is an "other" source. *Compare* 20 C.F.R. §§ 404.1513(a) & 416.913(a) (nurse practitioners do not fall within the list of acceptable medical sources) *with* 20 C.F.R. §§ 404.1513(d)(1) & 416.913(d)(1) (nurse practitioner identified as an "other" medical source). Although a nurse practitioner cannot "establish" or  "diagnosis" an impairment, evidence from a nurse practitioner "may be used 'to show the severity of [a claimant's] impairment[] and how it affects [her] ability to' engage in work-related activities." *Corbitt v. Astrue,* 2008 WL 1776574, *2 (M.D. Fla. Apr. 17, 2008), quoting 20 C.F.R. §§ 404.1513(d) & 416.913(d). And while the opinion of a nurse practitioner "is not entitled to the deference due a treating physician, it is still important evidence and must be duly considered." *Brinson v. Astrue,* 2010 WL 419402, *11 (N.D. Fla. Jan. 28, 2010) (citations omitted); *see also Corbitt, supra* ("The opinions of a treating nurse practitioner constitutes 'evidence to be considered on the record as a whole.'"); *see Hammond v. Astrue,* 2011 WL 2581955, *2 (M.D. Ga. Jun. 1, 2011) (only acceptable medical sources are entitled to controlling weight).

13

"Social Security Ruling 06-03p acknowledges that medical sources who do not qualify as 'acceptable medical sources' under the regulations are still considered valuable sources of information." *Sommer v. Astrue,* . . . 2010 WL 5883653, at *3 (E.D. Tenn. Dec. 17, 2010). That ruling reflects a reality of how health care is delivered in our country today, providing in pertinent part:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Butler v. Astrue,* 2012 WL 1094448, *2-3 (S.D. Ala. Mar. 30, 2012) (citations omitted).

In light of the foregoing principles, the Court initially acknowledges that the ALJ erred in identifying Leanne Tew as plaintiff's treating physician. However, that error was harmless given that Tew was—admittedly—plaintiff's treating nurse practitioner, *cf. Brinson, supra,* at *11 ("NP Bryan appears to have been a treating source with some familiarity with Plaintiff's condition acquired over time."), and she decidedly occupied a position to provide evidence regarding the severity of plaintiff's back pain. *See Merchant v. Astrue,* 2013 WL 5408412, *9 (N.D. Ala. Sept. 25, 2013) ("[W]hile [Nurse Practitioner] McCary cannot establish the claimant's back pain, her medical records can be used to establish the severity of the claimant's pain."). Thus, the undersigned finds no error in the ALJ according "great" weight to Tew's opinion that plaintiff does not experience disabling back pain, *see Barry v. Astrue,* 2010 WL 3168630, *11 (D. Ariz. Aug. 10, 2010) ("[T]he opinion of a nurse practitioner may be given more weight than that of even a treating source if the nurse practitioner 'has seen the individual more often than the treating source and has provided better supporting evidence and a better

explanation of . . . her opinion[.]'"), given her history of treating plaintiff (*see, e.g.*, Tr. 213-216 & 247-252) and given that her opinion is supported not only by her own records but as well by the objective findings of consultative examiners, Dr. Huey Kidd (*see* Tr. 223) and Dr. R. Rex Harris (*see* Tr. 203).[5]

**B.** **Plaintiff's Arguments that the ALJ Erred in Rejecting the Medical Source Statement of Dr. Harris and Made an RFC Determination that was not Specific.** Plaintiff's remaining arguments are that the ALJ erred in rejecting the RFC opinion of consultative examiner Dr. R. Rex Harris set forth in his Medical Source Statement (*see* Doc. 15, at 5-6) and also erred in identifying an RFC that is not specific (*id.* at 6 & 7 ("'The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.' . . . The ALJ failed to indicate how often Mr. Malone would be required to alternate positions, or how the frequency of changing positions would affect his ability to maintain attention, concentration and pace on the job.")). Clearly, both of these issues relate to the RFC determination made in this case.

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. §§ 404.1546(c) & 416.946(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her

---

[5]        And because the ALJ did not err in according great weight to Tew's opinion that plaintiff's back pain is not disabling, the Court cannot agree that the ALJ lacked any basis for finding plaintiff does not experience severe pain.

impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)).  Here, the ALJ determined Malone's RFC as follows: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant should work in an occupation that allows him to alternate between sitting and standing. Claimant should never climb ladders, ropes, or scaffolds. Claimant should use handrails to climb stairs. Claimant's work should be limited to simple tasks consistent with a SVP of 1 or 2.**" (Tr. 15 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other

requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[6]; *see also Hanna v. Astrue,* 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[7]

In order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue,* 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that

---

[6]     In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[7]     It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue,* 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases— include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the ALJ accorded "little" weight to the Medical Source Statement completed by an examining physician, Dr. R. Rex Harris. (*Compare* Tr. 21 (little weight given to Harris' opinion) *with* Tr. 204-207 (medical source statement).) The law in the Eleventh Circuit is clear that while "'the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion'" and the ALJ articulates her reasoning for rejecting the subject opinion. *Syrock, supra,* 764 F.2d at 835, quoting *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. Unit B 1981). Since the ALJ correctly applied the law in according "little weight" to Dr. Harris' RFC opinion and the evidence of record—including Dr. Harris' own narrative report and clinical findings (*see* Tr. 203), the relatively benign clinical findings of Dr. Kidd (*see* Tr. 223) and the treating nurse practitioner's opinion that Malone's back pain is not disabling (Tr. 252)—supports the ALJ's decision in this regard, no error was committed. In other words, because the ALJ articulated appropriate reasons for not giving Dr. Harris' RFC opinion more than "little" weight, and because those reasons are supported by substantial evidence, the undersigned need simply turn to the ALJ's RFC determination, and more closely examine whether that assessment is linked to specific evidence in the record regarding the plaintiff's ability to perform the physical, mental,

sensory, and other requirements of work.  *See, e.g., Salter v. Astrue*, 2012 WL 3817791, *3 (S.D. Ala. Sept. 4, 2012).

Importantly, in establishing Malone's RFC, which means determining Malone's "remaining ability to do work despite [his] impairments[,]" *Packer*, 542 Fed.Appx. at 891—keeping a focus on the extent of those impairments as documented by the credible record evidence—the ALJ sifted through the medical evidence of record (*see* Tr. 17-19), along with the claimant's testimony (*see* Tr. 15-17 & 19-20), to conclude that "the above residual functional capacity assessment is fully supported by the objective evidence, treatment records, the claimant's activities, and the record as a whole." (Tr. 21.) The analysis in this case shows this Court that the ALJ appropriately considered Malone's condition as a whole in determining his RFC. Accordingly, the ALJ's RFC determination provides an articulated linkage to the medical evidence of record. The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC.  *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)).  Thus, by "showing her work", the ALJ has provided the required "linkage" between the record evidence and her RFC determination necessary to facilitate this Court's meaningful review of her decision.

This Court's meaningful review of the ALJ's RFC determination is not imperiled by the ALJ's failure to specify in her hypotheticals posed to the VE the frequency that

Malone needed to change his sit/stand position. This is because the ALJ's instruction to the VE to add a sit/stand 'application"(Tr. 52) contains the reasonable "implication" that "the sit/stand option would be at [claimant's] own volition." *Williams v. Barnhart,* 140 Fed.Appx. 932, 937 (11th Cir. Aug. 15, 2005); *see also Thompson v. Astrue,* 442 Fed.Appx. 804, 806 & 807 (4th Cir. Aug. 10, 2011) ("Thompson also notes that although the ALJ found she required a sit-stand option, he failed to state how frequently she needed to alternate between sitting and standing. . . . The ALJ's RFC finding and hypothetical were consistent with an at-will sit-stand option, and we find that no greater specificity was required here."); *cf. Moore v. Commissioner of Social Security,* 478 Fed.Appx. 623, 625 (11th Cir. Jun. 6, 2012) ("The ALJ's hypothetical question limited the available jobs to those that required 'performing routine, predictable tasks in an atmosphere that allows for a sit/stand option.' Although the ALJ did not expressly include the conditions that Moore could not walk on uneven ground and could walk only 250 feet without a cane, the 'sit/stand option' expressly limited the available jobs to those permitting constant access to a chair. . . . Because the hypothetical question comprehensively described Moore's impairments, the VE's testimony constituted substantial evidence."). Accordingly, the Court finds no error in this regard.

Because substantial evidence of record supports the Commissioner's determination that Moore can perform the physical and mental requirements of a reduced range of light work as identified by the ALJ (*see* Tr. 15), and plaintiff makes no argument (different from the foregoing sit/stand argument) that this residual functional capacity would preclude his performance of the light jobs identified by the VE during the administrative hearing, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers

of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

<u>CONCLUSION</u>

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 18th day of July, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**